BEFORE THE
AMERICAN ARBITRATION ASSOCIATION

NORMENT SECURITY GROUP, INC.  )
                              )
Claimant and Counter-Respondent, )
                              )
and                           )   AAA Case No. 16-110-Y-02255-05
                              )
PCC CONSTRUCTION              )
COMPONENTS, INC.              )
                              )
Respondent and Counter-Claimant, )

## AGREEMENT FOR CONSENT AWARD AND MUTUAL PARTIAL RELEASES

This Agreement for Consent Award and Mutual Partial Releases is made this 2nd day of June 2006 by and between Norment Security Group, Inc. ("Norment") and PCC Construction Components, Inc. ("PCC").

WHEREAS, on or about April 10, 2002, Centex Construction Co., Inc., ("Centex") entered into a written contract with the United States of America, acting by and through the General Services Administration, for the construction of the E. Barrett Prettyman Courthouse Annex ("Project") located at Third Street and Constitution Avenue N.W, in Washington, D.C.

WHEREAS, on April 10, 2002, PCC entered into a written subcontract agreement with Centex to provide the "Glass & Glazing" for the Project;

WHEREAS, on May 1, 2002, PCC entered into a written Purchase Order Agreement ("Purchase Order") with Norment to furnish the Blast/Ballistic Resistant Exterior Windows ("Windows") for the Project;


EXHIBIT 1

WHEREAS, Norment supplied the windows for the Project;

WHEREAS, Norment has not been paid the balance of its contract or for approved change orders and extra work;

WHEREAS, PCC withheld payment from Norment and assessed Norment with backcharges equal to or exceeding Norment's contract balance;

WHEREAS, the parties desire to, among other things, resolve payment issues between them; and,

WHEREAS, the parties desire to express herein their respective agreements concerning these matters;

NOW THEREFORE, in consideration of the promises and agreements of the parties hereto, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. PCC agrees that the contract balance owing to Norment is $432,187.11, calculated as follows:

| | | |
|---|---|---|
| Original Purchase Order | | $2,298,000.00 |
| Approved Change Orders | | |
| Alternate 1 | (35,000) | |
| Alternate 2 | 30,000 | |
| Alternate 2 | (7,000) | |
| Alternate 3 | 50,000 | |
| PRO0005-0024 | 2,047 | |
| COP 4 & 5 | 9,888 | |
| North Br. W18 Window COP #2 | 12,100 | |
| G Booth Door Swing CE-0134 | 4,788 | |
| Glass Replacement COP #6 | 33,122 | |
| Subtotal | | $99,945.00 |
| PCC Backcharges (see Exhibit "A") | | ($64,995.37) |
| Centex Backcharges | | (135,429.52) |

2

| | |
|---|---|
| Revised Purchase Order | $2,197,520.11 |
| Paid to Norment | $1,765,333.00 |
| Contract Balance: | $432,187.11 |

2. Norment reserves the right to contest Centex's backcharges to PCC in the amount of $135,429.52 and Norment shall be entitled to claim and receive from Centex and its surety the amount of backcharges by Centex that Norment can demonstrate are not properly chargeable.

3. PCC hereby releases and forever discharges Norment and its directors, officers, shareholders, employees, attorneys, insurers, re-insurers, sureties, successors, assigns, agents, parent corporations, subsidiaries, and divisions from the following PCC claims and backcharges:

| | | |
|---|---|---|
| (a) | Mockup Deductive CO 01 | $ 62,213.00 |
| (b) | Norment's added deliveries DCO 04 | $ 26,800.00 |
| (c) | Late/out of sequence DCO 05 | $ 3,067.00 |
| (d) | Staging DCO 02 | $ 1,600.00 |
| (e) | Staging DCO 03 | $ 1,958.00 |
| (f) | Staging DCO 04 | $ 3,669.00 |
| (g) | Staging DCO 05 | $ 2,090.00 |
| (h) | DCO 04 Testing windows | $ 712.98 |
| (i) | DCO 05 Testing windows/rework | $ 5,731.00 |
| (j) | DCO 06 Testing windows 04 June 04 | $ 3,495.75 |
| (k) | N&S Atrium steel PCC refab errors | unpriced |

3

| | | | |
|---|---|---|---|
| (l) | W6-2-2 window removal and replacement | $ | 5,400.00 |
| (m) | Load of mis-fab windows for return to NSG | $ | 1,578.00 |
| (n) | Disassemble & removal of window for rework | $ | 849.00 |
| (o) | Northbridge windows head angle holes | | unpriced |
| (p) | Northbridge W188-6 3&4 jamb angles | | unpriced |
| (q) | Northbridge missing angles | | unpriced |
| (r) | PCC backcharges for stud wall removal and replacement dated 1/13/05 | $ | 5,735.00 |
| (s) | PCC backcharges for delay in precast erection due to windows stored on control lines dated 1/24/05 | $ | 946.52 |
| (t) | PCC backcharges for stud wall removal and replacement dated 1/26/05 | $ | 4,011.00 |

4. PCC hereby releases and forever discharges Norment and its directors, officers, shareholders, employees, attorneys, insurers, re-insurers, sureties, successors, assigns, agents, parent corporations, subsidiaries, and divisions from any and all other actions, causes of actions, liabilities, claims, damages, debts, and demands of every kind and nature whatsoever, whether sounding in contract or tort, known to PCC, related to or arising out of the Project, the Purchase Order, or Norment's work, except that PCC hereby reserves the following claims and/or backcharges:

(a) On March 3, 2004, Centex issued Change Order No. 0005 to PCC in the amount of $115,000.00 as compensation for a time extension granted by the General Services Administration. PCC contends that it lost compensation for those delays in the amount of $68,158.00 due to delays in mockup testing caused by Norment.

(b) The General Services Administration granted Centex a second

4

extension of time of 88 days for which PCC has claimed delay costs of $80,253.85. PCC reserves the right to make a claim against Norment in the event PCC's change order request is denied or reduced due to delays caused by Norment.

(c) The claim against Norment set forth in PCC's letter to Norment dated December 15, 2004, in the amount of $528,246.00 (all other claims set forth in that letter are released and discharged).

(d) Any claim or claims that Centex may assert against PCC arising out of the work performed by Norment on the Project.

Norment denies that PCC or Centex (or its subcontractors) suffered any losses or damages as a result of Norment's performance, mockup testing, any late delivery of windows, or any corrective action taken to remediate its windows, and Norment hereby reserves all of its defenses to the claims reserved by PCC in above paragraphs (a) through (d).

5. Norment hereby releases and forever discharges PCC and its directors, officers, shareholders, employees, attorneys, insurers, re-insurers, sureties, successors, assigns, agents, subsidiaries, and divisions, from Norment's claim in the amount of $143,484.48 for material costs incurred by Norment when Norment changed the size and thickness (from 1/4" to 3/8") of its steel angles. PCC hereby releases and forever discharges Norment and its directors, officers, shareholders, employees, attorneys, insurers, re-insurers, sureties, successors, assigns, agents, subsidiaries, and divisions, from PCC's claim in the amount of $134,771.00 for trips made by PCC to Norment's facilities in Montgomery (Deductive CO 03).

5

6. PCC acknowledges that Norment is entitled to recover from Centex and/or its surety, Travelers Casualty and Surety Company ("Travelers"), the following Norment proposed and submitted change orders, and PCC hereby relinquishes to Norment, all of its rights, contractual and otherwise, to claim payment of such change orders by Centex and Travelers and to receive any and all funds from Centex and its surety to which PCC and/or Norment may be entitled to receive for the work performed and the labor and materials furnished by Norment related to these change orders:

| | |
|---|---|
| Norment CPO #1 | $28,171.00 |
| Norment COP #2 | $20,482.00 |
| Norment COP #3 | $ 7,046.19 |

If it is determined that CPO #1 was paid by Centex to PCC, Norment shall be entitled to an increase in the contract balance owed by PCC to Norment (and an increase in the judgment in favor of Norment and against PCC) in the amount of $28,171.00 (or any part thereof paid to PCC by Centex).

7. PCC agrees to support and assist and fully cooperate with Norment in the prosecution of its two Halfen Anchoring System-related claims against Centex and Travelers including but not limited to providing deposition and trial testimony. For this cooperation and assistance, PCC shall receive fifty percent (50%) of any net recovery on Norment's claim of $143,484.48 for the increase in the size and thickness (from 1/4" to 3/8") of the steel angle and thirty three and one-third percent (33 1/3%) of any net recovery on Norment's Embedment Claim of $373,423.36. "Net recovery" is hereby defined as any amount paid to Norment by settlement or by judgment on these claims less fifty percent (50%) of Norment's attorney's fees and litigation expenses attributable to these claims. Norment shall have the discretion to dismiss or withdraw this claim or to

6

settle this claim for an amount it deems fair and reasonable. Norment shall determine the "net recovery" on such claim. If PCC disputes Norment's determination of the "net recovery", it may submit the dispute to a single arbitrator agreed upon by the parties who shall decide the dispute. The decision of the arbitrator shall be binding on the parties. The parties shall share equally in the fees and expenses of the arbitrator.

8. PCC hereby agrees that Norment is entitled to the amount of $64,602.86 for extra work, which represents fifty percent (50%) of the following Norment claims for extra work:

(a) Norment's claim in the amount of $38,510.00 for costs incurred by Norment related to the AR windows (see 8/16/04 e-mail from Mike Mathis to Donald Deister);

(b) Norment's claims for replacement glass in the amount of $14,193.50 ($47,315.50-$33,122.00) (Norment COP #06BR2) and $1,952.50 (Norment's COP #09R1);

(c) Norment's claim in the amount of $73,949.71 for costs incurred by Norment for factory installation of the jamb angles at PCC's direction.

9. PCC hereby releases and forever discharges Norment and its directors, officers, shareholders, employees, attorneys, insurers, re-insurers, sureties, successors, assigns, agents, subsidiaries or divisions, from any and all actions, causes of actions, liabilities, claims, damages, debts, and demands of every kind and nature whatsoever, whether sounding in contract or tort, known or unknown to PCC, accrued or unaccrued, asserted or unasserted in this arbitration, that PCC may have against Norment related to the project known as the FDA "Shared Use Building".

7

10. PCC acknowledges that Norment will seek recovery of its contract balance set out in above paragraph 1 in the amount of $432,187.11 and $64,302.86 for extra work as set forth in the above paragraph 8 in the pending Miller Act suit between Norment and Centex and its surety Travelers. This Agreement may not be used by PCC or Centex, or its surety Travelers, to defeat or deny recovery to Norment on its Miller Act claims or other claims asserted by Norment in that action. To the extent that this Agreement is used by any party to defeat or diminish Norment's claims in the Miller Act suit, this Agreement is null and void. Both PCC and Norment contemplate that Norment will be paid the amounts of $432,187.11 and $64,302.86 by Centex and/or its surety Travelers. Norment agrees not to otherwise pursue collection of these amounts against PCC until the conclusion of the Centex litigation and the Arch litigation. Norment consents to lift the stay in the Arch litigation and will so advise Arch.

11. This Agreement shall be binding not only in this Arbitration but in any and all other present or future arbitrations and other actions and proceedings between Norment and PCC and between Norment or PCC and any other party including but not limited to Arch Insurance Company and the action currently pending between PCC and Arch Insurance Company in the U.S. District Court for the District of Maryland, Civil Action No. RWT-05-CV-1758, in which Norment may interpose the final judgment entered pursuant to this Agreement as an affirmative claim, offset, or defense.

12. In the Centex Litigation, Centex has asserted Modern Mosaic's claim against Norment in the amount of $308,700.00. Norment denies that it has any liability to Centex, Modern Mosaic, or PCC related to this claim or any other claim of Modern Mosaic. Centex may assert the same Modern Mosaic claim against PCC. Both PCC and

Norment hereby expressly reserve any and all claims either may have against the other arising out of or related to the Modern Mosaic claim and any other claims asserted by Centex and reserve all defenses to such claims.

13. PCC agrees that that the Arbitration Panel in this case shall enter an award of final judgment in favor of Norment in the amount of $496,489.97, which shall be binding and non-appealable by PCC. Norment hereby releases and forever discharges PCC and its directors, officers, shareholders, employees, attorneys, insurers, re-insurers, sureties, successors, assigns, agents, parent corporations, subsidiaries, and divisions from any and all other actions, causes of action, liabilities, claims, damages, debts, and demands of every kind and nature whatsoever, whether sounding in contract or tort, known to Norment, and related to or arising out of the Project, the Purchase Order, or Norment's work.

14. The parties acknowledge that they have had the opportunity to consult legal counsel of their choosing, that they understand the terms of this Agreement, that no other promise or inducement has been made except as set forth herein, and that they signed this Agreement voluntarily. The parties acknowledge that this Agreement was the product of negotiations between the parties and agree that this Agreement was mutually drafted by the parties.

15. Should any portion of this Agreement be found unenforceable by a court of competent jurisdiction, such unenforceable portions shall be struck from the Agreement and the remainder of the Agreement shall continue in full force and effect.

16. Except as modified by this Agreement, the Purchase Order between Norment and PCC shall remain in full force and effect.

17. This Agreement supersedes all other verbal and written agreements concerning the same subject matter.

18. This Agreement shall be binding upon and inure to the benefit of the respective parties and all of their successors and assigns. This Agreement shall not inure to the benefit of third parties, other than lawful successors and assigns of the parties hereto.

19. The laws of the State of Maryland shall govern the interpretation and performance of this Agreement.

20. This Agreement may be executed in any number of counterparts and facsimile signatures shall be considered as originals.

IN WITNESS WHEREOF, the parties hereto have affixed their hands and seals in execution hereof this 2nd day of June 2006.

NORMENT SECURITY GROUP, INC.

Date: 06/02/06    By: [signature]
Its: Vice Pres Finance

PCC CONSTRUCTION COMPONENTS, INC.

Date: 2 June 2006    By: [signature]
Its: President

STATE OF ALABAMA
COUNTY OF MONTGOMERY

I, HEATHER LYNN RAHN, a Notary Public in and for said county in said state, hereby certify that STAN SASSER, whose name as VICE PRES FINANCE of Norment Security Group, Inc., a corporation, is signed to the foregoing Agreement for Consent Award and Mutual Partial Releases, and who is known to be, acknowledged before me on this day that, being informed of the contents of the above and foregoing Agreement for Consent Award and

10

Mutual Partial Releases, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation on the day the same bears date.

Given under my hand and official seal of office this the 2ND day of June, 2006.

_____
NOTARY PUBLIC
My commission expires: 7/19/08

STATE OF MARYLAND
COUNTY OF MONTGOMERY

I, Donald Deisten, a Notary Public Witness in and for said county in said state, hereby certify that Vito Germinario, whose name as President of PCC Production Components, Inc., a corporation, is signed to the foregoing Agreement for Consent Award (Constituent) and Mutual Partial Releases, and who is known to be, acknowledged before me on this day that, being informed of the contents of the above and foregoing Agreement for Consent Award and Mutual Partial Releases, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation on the day the same bears date.

Given under my hand and official seal of office this the _____ day of June, 2006.

_____ 02 June 06
NOTARY PUBLIC  WITNESS
My commission expires:_____

11